IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Dianna Simons individually and on behalf of other similarly situated Consenters, | ) ) ) | C/A No.  3:11-cv-0792-CMC |
| Plaintiff, | ) ) | |
| v. | ) ) | **OPINION AND ORDER** |
| Pryor's, Inc., KFC Group of Columbia, Inc., Sylvan Food Systems, Inc., XXX, Inc., YYY, Inc., and ZZZ, Inc., | ) ) ) ) | |
| Defendants. | ) ) | |

Through this action, Plaintiff, Dianna Simons[1] ("Simons"), seeks recovery under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") for unpaid overtime.  She proceeds on behalf of herself and similarly situated restaurant managers and assistant managers ("Restaurant-Level Managers") employed by one or more of the Defendants.[2]  Simons does not challenge the general classification of Restaurant-Level Managers as "exempt" from payment of overtime wages.  Instead, she argues that any exempt status was lost as a result of Defendants' policy and practice of making improper deductions from the salaries of these managerial employees.

---

[1] In an affidavit filed in support of her reply, Plaintiff spells her last name "Simmons."  This suggests that the Complaint may, ultimately, require amendment to correct the spelling of Plaintiff's name.  For purposes of this order, however, the court utilizes the same spelling as in the Complaint.

[2]  The parties, in some instances, refer to these managers as "store managers" and to the restaurant locations as "stores."  For ease of reference, the court will refer to the employees Simons proposes to include in her collective action as  "Restaurant-Level Managers" and their specific work locations as "restaurants."

The matter is now before the court on Simons' motion for conditional certification of a collective action under 29 U.S.C. § 216(b). Dkt. No. 19. Simons seeks to include all Restaurant-Level Managers employed by either Defendants Pryor's, Inc. ("Pryor's") or Sylvan Food Systems, Inc. ("Sylvan") within the collective action.[3] For the reasons set forth below, the court finds Simons' motion to be without adequate legal or factual support. The court is not, however, convinced that these deficiencies cannot be cured through limited discovery and further briefing. The court, therefore, denies the motion without prejudice to refiling after the completion of discovery outlined below.

## STANDARD

The FLSA authorizes collective actions through the provisions of 29 U.S.C. § 216(b), which provides as follows:

> An action to recover [unpaid overtime compensation] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Thus, unlike a class action under Fed. R. Civ. P. 23(b), a collective action under the FLSA includes only those persons who consent in writing to become a party. This distinction has led most courts to apply a two-stage approach to certification under Section 216(b). *See, e.g., Purdham v. Fairfax County Pub. Schs*, 629 F. Supp. 2d 544, 547-48 (E.D. Va. 2009) (applying two-stage

---

[3] Simons has voluntarily dismissed (without prejudice) her claims against KFC Group of Columbia, Inc., based on assurances from Pryor's and Sylvan that no such entity exists. The remaining "Defendants" are fictitious entities and are not referenced in Simons' present motion.

approach while noting that "the Fourth Circuit has not settled on a test for conditional certification in an FLSA action"). In the first stage, the court decides whether to grant *conditional* certification based on a limited record. If the court finds that the proposed class members are similarly situated, the court conditionally certifies the class, giving putative class members notice and the opportunity to opt in. *Purdham* at 547; *see also* Newberg, Class Actions § 24:3 (explaining typical two-stage approach applied under Section 216(b) of the FLSA). After notice and discovery, the court may reconsider whether the matter should proceed to trial as a collective action if a motion for decertification is filed. *Id.*; *see also Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213–14 (5th Cir.1995) (addressing disparate approaches followed by the many district courts which have applied Section 216(b) and noting that "the proper class certification procedure for a [collective action] is largely a matter of first impression for the circuit courts") *overruled on other grounds by Desert Place, Inc. v. Costa*, 539 U.S. 90 (2003).[4]

At the notice (conditional certification) stage, courts generally have minimal evidence. *Id.* Thus, they examine the pleadings and any proffered evidence to determine whether members of the proposed class are "similarly situated." *Purdham* at 548. While the burden is "relatively light," rather than "onerous," it is also not "invisible." *Id.* As explained in *Mooney*, some courts applying the two-stage approach "appear to require nothing more [at the notice stage] than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Mooney* at n. 8 (quoting *Sealing v. Hoffman-La Riche, Inc.,* 118

---

[4] The claims at issue in *Mooney* arose under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). That Act incorporates Section 216 of the FLSA. Thus, although decided under a different statute, the FLSA's procedures and standards applied. *Mooney* at 1211. Ultimately, the *Mooney* court found it unnecessary to decide which methodology was correct because the district court's decision to decertify (at the second stage) was proper.

F.R.D. 392 , 407 (D.N.J. 1988)).  Whether to grant conditional certification is, nonetheless, a matter vested in the discretion of the district court.  *Id.* at 1213 (noting that district court's application of the relevant "standard must be reviewed for abuse of discretion" and that the two-stage approach "lends itself to an *ad hoc* analysis on a case-by-case basis"); Dkt. No. 32 at 5 (citing *Hoffman-LaRoche*, *Inc. v. Sealing*, 493 U.S. 165, 169 (1989)).

Some courts also impose a requirement that the court "satisfy itself that there are other employees" who are both "similarly situated" *and* "*desire to opt-in*." *See* Dkt. No. 32 at 6 (Defendants' opposition memorandum quoting *Dybach vs. State of Fla. Dep't of Corrs.,* 942 F.2d 1562, 1567-68 (11th Cir. 1991)).  Neither party has directed the court to any decision within the Fourth Circuit which imposes this requirement.

Absent authority requiring consideration of the actual interest level of potential opt-ins, this court is not inclined to impose such a requirement, at least under the facts of this case, for three reasons.  First, it strikes the court as unfair to impose such a burden without allowing Simons, a former employee, some opportunity to survey Defendants' existing employees – an activity the court assumes Defendants would oppose as disruptive.  Second, such a requirement seems at odds with, or at least duplicative of, the special opt-in procedures applied under the FLSA which serves the same purpose as allowing a plaintiff to survey other employees with less potential for disruption. Finally, the court's ultimate conclusion, *infra*, that more support is needed before the court will conditionally certify a collective action provides adequate protection.

## BACKGROUND

### I.    COMPLAINT

In her unverified Complaint, Simons alleges that "Defendant Pryor's KFC Group, Inc., is the owner and managing operator of Defendant Pryor's Inc., and Defendant Sylvan Foods, Inc."

Complaint ¶ 9.[5] She, thereafter, treats all Defendants collectively including by alleging that she was an "Assistant Manager *for Defendants* between February 2008 and February 2011." *Id.* ¶ 12 (emphasis added). She further alleges that, during this period, she "was required and permitted to work in excess of forty hours per week and was compensated at a flat weekly rate without overtime compensation. *Id.* ¶ 14.

Simons alleges that her position's exempt status, if any, was lost as a result of the actions of Defendants in taking "improper payroll deductions based on quantity and/or quality of work" from her salary and from the salaries of similarly situated Restaurant-Level Managers. *Id.* ¶ 36. She asserts that these improper deductions constituted a willful violation of the FLSA and resulted in a loss of any otherwise-available exempt status for the Restaurant-Level Managers. *Id.* ¶¶ 34, 40, 42. Thus, she seeks recovery of overtime pay for hours worked in excess of 40 per week for the three-year period preceding the filing of this action and other related relief. Complaint at Prayer.

As to the improper deductions, Simons alleges that "Defendants had and continue to have an actual written policy and practice of making improper deductions from salaries" of Restaurant-Level Managers including for (1) cash-register shortfalls; (2) assigning more than one employee to a cash register; (3) losses resulting from a failure to follow company check and credit card policies; (4) loss or damage to Defendants' property; (5) failure to return keys; (6) employee debts to Defendants (*e.g.*, due to cash losses and personal phone calls); and (7) losses due to abuse of, failure to maintain or accidents involving Defendants' vehicles. *Id.* ¶¶ 16, 17. She alleges that she,

---

[5] "Pryor's KFC Group, Inc." is referenced in the Complaint but is not named as a Defendant in the caption or otherwise. The Complaint does name "KFC Group of Columbia, Inc." as a Defendant but, as noted above, that entity has been dismissed. Defendants deny knowledge of the existence of or affiliation with any entity known by either name.

personally, has been subjected to a deduction for a cash register shortage (which was imposed on two other Restaurant-Level Managers as well). *Id.* ¶ 18. She also alleges that she was subjected to other deductions related to work-quality not mentioned in the written policy for "negative inspection results" (including inspection results which led to a suspension) and violations of company procedures such as leaving chicken under a warmer too long and allowing the restaurant to run out of product. *Id.* ¶¶ 11, 23, 26-28. In addition, Simons alleges that her pay was impermissibly docked for sick leave in spite of the absence of a sick leave policy and her having made up the lost time. *Id.* ¶ 29.

## II.    SIMONS' MOTION

**Motion.** In her motion, Simons describes this action as one for "overtime compensation" based on "improper [salary] deductions." Dkt. No. 19 at 1-2. She asserts that she and other Restaurant-Level Managers are similarly situated because all (1) "were classified as 'exempt' for purposes of the FLSA" and (2) were "subject to the same policies and procedures resulting in unlawful deductions from their salaries and the non-payment of overtime compensation" as specified in "Paragraphs 14 through 34 of the Complaint." *Id.* at 2.

**Proffered Evidence.** Simons proffers an affidavit from a former co-worker, Stephanie Preston ("Preston"), who Simons refers to as "another former restaurant-level management employee [who] was subjected to the same unlawful policies and procedures as Simons and who desires to opt in to this action." *Id.* Simons also relies on three attachments to Preston's affidavit.[6] Preston avers that she was employed by Sylvan as a Restaurant General Manager from March 2006 to May 3,

_____

[6] As noted above, Simons' Complaint is not verified. Neither did she provide an affidavit with her motion and opening memorandum. She has, however, provided an affidavit on reply (discussed *infra*).

6

2010, where she worked in excess of 50 hours a week and was paid a flat salary of $600 per week. She further avers that her employment was governed, in part, by two "Employee Handbook/Policy Manuals," which she includes as attachments. Preston avers that she incurred deductions for cash drawer shortages pursuant to policies in those Manuals. She also refers to other "punitive deductions" for "the quality of work, such as failed inspections . . . loss of inventory, or other alleged violations of company policies and procedures, including deductions resulting from loss or damage to company property." Dkt. No. 19-3 at 2.[7] Preston gives a specific example of a $1,300 deduction she incurred for throwing away chicken which was beyond its expiration date. *Id.* Finally, Preston avers that, because the company does not have a paid sick-leave policy, she would, if sick, "not only have pay deducted from my salary for the time I missed but would also have to make up the time missed, without additional compensation." *Id.* at 2-3. Preston does not expressly state that she ever actually suffered such a deduction. Preston provides no information as to when the deductions were made or the location of the restaurant where she was then working.

Attachments to Preston's affidavit include a January 2007 memorandum from "Tim Wilson" (Dkt. No. 19-4), an "Employee Handbook/Policy Manual" with a date stamp of March 21, 2005 ("2005 Manual") (Dkt. No. 19-5), and a similar manual with no date stamp ("Undated Manual") (Dkt. No. 19-6) (collectively "Manuals"). The cover pages of both manuals refer to "Pryor's KFC

---

[7] This information is included in a second subparagraph following Preston's statement that she "specifically incurred deductions to my own salary pursuant to policies and procedures regarding" two listed categories of deductions: for cash drawer shortages and more generically referenced "[p]unitive deductions from Manager and Assistant Manager salaries[.]" It is not, therefore, entirely clear whether Preston is claiming to have personally incurred all of these categories of deduction.

Group" above the title of the manual, then list both Pryor's and Sylvan below the title.[8]

Under the heading "Additional Terms of Employment," both Manuals list a variety of potential deductions from "wages" similar to those complained of by Simons and Preston as deductions from their *salaries*. *See* Dkt. No. 19-4 at 10-11; Dkt. No. 19-5 at 7-8. Both Manuals also state that "[a]ny deductions made from an employee's wages for mishandling company funds or property will [be] made in compliance with Department of Labor Laws." Dkt. No. 19-4 at 11; Dkt. No. 19-5 at 8.

The Wilson memorandum is directed to "All Salaried Management Personnel" and states an expectation that such employees "will work a minimum of fifty hours per week." This memorandum also states that "[w]e do not offer sick days or extra days off." The memorandum directs recipients to "Place [the memorandum] in Policy and Procedures Manual." The memorandum does not state Wilson's position or identify the entity on whose behalf the memorandum was prepared. In her affidavit, Preston identifies Tim Wilson as "CEO" but does not state for which entity.

**Opening Memorandum.** In her supporting memorandum, Simons relies on 29 C.F.R. §541.603(a) which provides as follows:

> An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis.

Dkt. No. 19-1 at 3 (quoting Section 541.603(a)). Simons argues that she and other Restaurant-Level Managers "were subjected to actual policies, procedures, and practices regarding improper

---

[8] On its cover page, the 2005 Manual refers to "Pryor's KFC Group" above the title and "Pryor's, Inc.[,] Sylvan Food Systems, Inc.[,] and Seventerprises, Inc.[,]" below the title. The cover page of the Undated Manual is the same except for the omission of "Seventerprises, Inc."

8

deductions based upon the quality and quantity of their work, including disciplinary suspensions, and were denied compensation for time in which they performed work in a workweek, both of which contravene 29 C.F.R. §541.118(a)." Dkt. No. 19-1 at 3.

Beyond the cryptic citation to Section 541.118(a), which is not quoted or otherwise discussed, Simons does not offer any authority in support of her position that the particular deductions alleged in the Complaint and referenced in Preston's affidavit with its attached documents are "improper." This poses particular difficulties as the citation itself appears to refer to an earlier version of the Code of Federal Regulations (the version in effect since 2004 contains no Section 541.118). Even under the comparable regulatory provision applicable during the relevant period (Section 541.602(a)), it is not clear on what basis Plaintiff challenges the deductions other than a generic argument that they constitute impermissible deductions for "quality and quantity of . . . work."[9] Thus, Simons fails in this memorandum to provide adequate support for the threshold premise that the alleged deductions, if actually taken, would cause Restaurant-Level Managers to

---

[9] The current version of the Code of Federal Regulations includes the following provision comparable to the earlier provision on which Simons relies:

> General rule. An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is *not subject to reduction because of variations in the quality or quantity of the work performed*. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.

29 C.F.R. § 541.602(a) (effective April 23, 2004). Reading Section 541.602 in full (general prohibition in (a) and exceptions in (b)) suggests that, *dependent on the circumstances*, at least some of the alleged deductions referenced in Simons' Complaint *may* be impermissible. At this stage, the court notes only the possibility given the limited factual details and legal authority offered.

9

lose their exempt status.

### III.  DEFENDANTS' OPPOSITION

Defendants oppose conditional certification of a collective action on three grounds.  First, Defendants argue that Simons has failed to show that there are a sufficient number of employees *who desire to opt in*.  Second, Defendants argue that the proposed class claims would require individualized determinations as to liability and damages, making collective treatment inappropriate. Finally, Defendants argue that the proposed class is overly broad because it would include employees of corporations for which Simons never worked and locations other than those where she suffered deductions.

**Need for "interested opt-ins."**  As to potential opt-ins, Defendants note that Simons has identified only one other person who has expressed an interest in opting in: Preston.  They counter this single potential opt-in with affidavits from four Restaurant-Level Managers (all still currently employed) who aver that they have never had deductions of the type challenged in this action taken from their salaries.  Defendants also note that, during the three years preceding the filing of this action, Sylvan employed 102 "managerial employees" and Pryor's employed 30.

**Necessity for Individualized Proof.** Even if a sufficient number desired inclusion, Defendants argue that the court should not certify a collective action because it would be necessary to make an individualized determination  of liability and damages as to each class member.  As to this argument, Defendants focus on the large number of locations, corporate distinctions (between Sylvan and Pryor's) and need to determine, as to each member of the collective action, what deductions were taken and whether the deductions were improper.  Defendants note that "there is no *per se* rule prohibiting all deductions from the salaries of exempt employees."  Dkt. No. 32 at 9.

10

Acknowledging the general principle that deductions are prohibited, Defendants note a variety of exceptions for "personal days, disciplinary suspensions, leave under the Family Medical Leave Act . . . and infractions of major safety rules." *Id.* (citing 29 C.F.R. § 541.602 and also noting that other legally permissible deductions would include garnishment for back taxes). Thus, Defendants argue the court would need to "independently analyze the circumstances of each deduction for each managerial employee to determine whether those deductions were lawful." *Id.* at 10 (also arguing that individualized damages calculations would be required); *see also id.* at 11 (arguing that even if a deductions policy exists, it "has not uniformly resulted in deductions for managerial employees" and that the issue "is not the *existence* of a uniform policy, but the uniform *application* of that policy").

By way of example, Defendants concede that deductions were made from Simons' salary in the form of garnishment for taxes and for one disciplinary suspension. Defendants explain that the garnishment was not "improper" because it was required by law.[10] They also argue that the deduction for the failed health inspection was permissible because it should be characterized as a deduction following a suspension for a "major safety infraction." Dkt. No. 32 at 2 (citing C.F.R. 541.602(b)(4) & (5) in support of the permissibility of such a deduction). Defendants' failure to reference any other deductions suggests that these were the only reasons for which deductions were ever made from Simons' salary, although this is not expressly stated. Defendants also imply but do not expressly state that Simons incurred deductions from her salary (at least other than for garnishment) only while working at Sylvan's "Sumter Highway" restaurant.

_____

[10] The complaint does not challenge any deduction for garnishment and Simons concedes in her Reply that she is not challenging the garnishment.

**Overbreadth.** Finally, Defendants argue that the proposed class is overbroad. In this regard, Defendants argue that the class should be limited to Restaurant-Level Managers at the one location where Simons incurred deductions (Sumter Highway restaurant). Alternatively, Defendants argue that the class should be limited to Sylvan employees as Pryor's "is a separate corporate entity, incorporated in a different state, serving a different geographic area, operated by different area supervisors and managers, and employing different employees than Sylvan[.]" *Id.* at 13.

In support of this argument, Defendants proffer evidence that Simons and Preston both worked solely for Sylvan. Defendants also proffer evidence that Sylvan and Pryor's are separate legal entities, incorporated in different states, and operating in different geographic areas (albeit with both having some locations in South Carolina). Defendants concede that there is some overlap of ownership between the two corporations , but deny that the entities are "owned or managed by any other entity" or that they are "subsidiaries or affiliates of each other." Dkt. No. 32 at 4. Defendants assert that "Plaintiff does not offer any other evidence of a connection between Sylvan and Pryor's[.]"

## IV.    SIMONS' REPLY

In her reply, Simons first argues that there is no requirement that she establish that there are others who desire to opt in – only that she show that there are others similarly situated. Dkt. No. 34 at 1-3. She then argues that she has made a sufficient showing that others are similarly situated because "[i]f the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same classification working for the same managers responsible for the actual improper deductions." Dkt. No. 34 at 4 (quoting 29 C.F.R. § 541.603(b) (emphasis omitted)).

3:11-cv-00792-CMC    Date Filed 07/26/11    Entry Number 35    Page 13 of 22

Simons argues she has made an adequate showing (at least as to Sylvan) because the policies and procedures which allowed the deductions applied to all of Sylvan's locations, and she and Preston worked at six of these locations. She further notes that Defendants [Sylvan and Pryor's] have common ownership and leadership" and that their Restaurant-Level Managers "were **subject to** the same policies and procedures enabling the impermissible deductions[.]" *Id.* at 4 (emphasis in original). Finally, Simons argues that certification is not precluded simply because some differences exist between the various Restaurant-Level Managers, which may require some individualized determinations.

Simons also proffers additional evidence including her own affidavit and a supplemental affidavit from Preston. In her supplemental affidavit, Preston refers to a "manager's manual" which is not provided, unless it is simply a different way of referring to the Manuals included with the original affidavit. Preston avers that this manual applied to both Pryor's and Sylvan. She also avers that (1) Tim Wilson is or was CEO of both Sylvan and Pryor's, (2) various events including training and parties were held jointly for both entities, and (3) the restaurants of the two corporations were ranked in a single list. Preston also avers that the "policies and procedures resulting in the unlawful deductions . . . were discussed at quarterly meetings" of Sylvan managers.

In her affidavit, Simons avers that, when she worked at a Decker Road location, the manager "strictly enforced the deductions policy" for inventory shortages because it "would be taken from her salary if she did not collect it from her subordinates." Dkt. No. 34-2 ¶ 3. (Simons does not state that *she* was subjected to such a salary deduction.) Simons also avers that Wilson "regularly discussed [the] deduction-related policies and procedures with restaurant-level management" and that she was not only subject to these deductions but also had to enforce them. *Id.* ¶¶ 9, 10. Simons

13

avers that she "personally incurred deductions . . .[for] end-of-the-month and other cash shortages" and "was threatened with punitive deductions . . . based on the quality of work, namely a failed inspection." Simons does not state when the alleged deductions from her salary (or threats of deductions) were made. Neither does she identify the restaurant in which she was working at the time of the deduction. She also states that she "was informed that District Managers would have deductions taken from their salaries if they failed to deduct the cash shortages . . . from their subordinates."[11] Simons affidavit is, otherwise, largely repetitive of Preston's.

## DISCUSSION

Defendants' three arguments in opposition to certification are addressed below. While the court is not persuaded by the first two arguments, it finds the third raises serious concerns as to the propriety of certifying as broad a collective action as Simons seeks, at least based on the present record. These concerns arise from the limited nature of the evidence proffered which, while sufficient to suggest the *possibility* of a practice of improper deductions, is insufficient to allow the court to determine how broadly the policy and practice was applied. Thus, the court cannot determine from the present record which, if any, Restaurant-Level Managers employed by Sylvan and Pryor's are similarly situated to Simons. This determination is made more difficult by two related factors: (1) Simons' reliance on a broad and somewhat ill-defined group of alleged improper deductions; and (2) her failure to make a threshold showing that these alleged deductions are

---

[11] This is apparently offered as further support for the breadth of application of the policy (to other restaurant-level managers), rather than for the purpose of including District Managers in the class.

"improper."[12]   The court, therefore, denies Simons' motion without prejudice to refiling after completion of discovery specified below.

**Others Interested in Opting In.**   For reasons discussed above, the court does not find Simons' failure to proffer evidence that there are other employees interested in opting in determinative. *See supra* "Standard." Absent more compelling authority, the court believes Simons need only establish that there is an adequately defined group of other employees who are similarly situated with respect to the challenged (and adequately defined) payroll practices.

**Need for Individualized Proof.**   Similarly, the court is not persuaded that it should deny conditional certification of a collective action due to the possible need for individualized proof of some aspects of liability and damages.   With regard to liability, the court is particularly persuaded by 29 C.F.R. § 541.603(b) which provides that proof of an "actual practice of making improper deductions" will result  in loss of the exemption "during the time period in which the improper deductions were made for employees in the same classification working for the same managers responsible for the actual improper deductions."   To the extent developments after conditional certification establish the need for individualized determinations beyond those appropriate to a collective action, the two-stage approach provides the opportunity for decertification or narrowing of the issues to be resolved collectively.

**Breadth of Class.**   Defendants' arguments as to the breadth of the proposed collective action persuade the court that Simons has not yet made an adequate showing for certification of a collective

---

[12]   Before a determination can be made that other employees are similarly situated with respect to challenged payroll practices, those practices must be adequately defined.  While perhaps not strictly required, a threshold showing that the alleged practices, if proven, are likely impermissible will also be required in this case as that may narrow the practices to be addressed in the collective action.

action.  The court is not, however, prepared to foreclose the possibility of certification on a more developed record.

Simons has proffered evidence which supports a reasonable inference that various payroll practices were applied broadly to employees of both Sylvan and Pryor's.  For example, policies addressed in the Manuals would appear to apply broadly to all wage workers for both companies and policies referenced in Wilson's memorandum applied to all salaried managers within whatever entities were the intended recipients of that memorandum.  It is not, however, clear to what degree the deductions referenced in the Manual were imposed on *salaried* workers, most critically Restaurant-Level Managers.  Neither is it clear to whom Wilson's memorandum was directed (whether just to Sylvan managers or also to Pryor's managers).  There are also open questions regarding the relationship between Sylvan and Pryor's which leave uncertain whether the Restaurant-Level Managers of both entities should be covered by the same collective action.  It is, likewise, unclear when and at which locations Simons and Preston incurred the deductions of which they complain.  Thus, the court cannot determine whether these were single-location aberrations, or part of a larger policy applicable broadly to Sylvan and possibly to Sylvan and Pryor's.[13]  Each of

---

[13] Simons had, at the least, a reasonable basis for alleging that Sylvan and Pryor's were part of the same "group" (even if an informal group) in light of (1) use of common Manuals (which first listed "Pryor's KFC Group" then Sylvan and Pryor's as if part of that "group"), and (2) if Preston is correct, joint events, consolidated restaurant rankings, and a common "CEO."  While the written nature of the deduction policy (as stated in the Manual), alleged discussion of it in meetings, and apparent centralized management of payroll matters suggests some degree of uniformity of application, at least to wage workers, it is unclear to what degree the deductions were applied to salaried managers.  Thus, the present record does not allow the court to predict whether deductions from Simons and Preston's salaries were mere aberrations at a single restaurant or application of the policy to a broad class of similarly situated Restaurant-Level Managers.

Defendants, in contrast, point to the various legal distinctions between Sylvan and Pryor's, disavow any affiliate or sibling relationship between the two corporations, and deny the existence of any "Pryor's KFC Group."  They fail, however, to offer any explanation for the common

these open issues impacts at least the scope of any collective action which may be certified (both with respect to who should be allowed to opt-in and the allegations of improper deductions to be addressed).

While some of the missing evidence should be within the control of Simons and Preston, much would not. Most critically, information relating to the ownership, control, management, and interrelationship of Sylvan and Pryor's is within Defendants' control. Defendants would also have control over personnel and payroll records for Simons and Preston which may be needed to confirm the dates of any deductions and restaurant locations involved. Defendants would also likely have information which would disclose who authorized or approved the allegedly improper deductions claimed by Simons and Preston. This information may help determine whether the challenged deductions were part of a broader practice or limited to a single restaurant location or limited number of restaurants under a common manager. Consequently, it may aid in determining the scope of the action.

While the burden of persuading the court to conditionally certify a collective action rests on Simons, the court is also concerned with issues raised by some of the evidence proffered by Defendants. As with the corporate structure and control issues, this evidence relates to matters largely or entirely within Defendants' control. Moreover, the court's concerns arise from issues raised by Defendants' proffered affidavits. For example, while conceding that Sylvan alone had 102

---

"Employee Handbook/Policy Manuals" which refer to such a parent "group." Similarly, Defendants assert that the two entities "employ separate area supervisors," and "do not share or transfer employees between one another," although they "utilize a common administrative office . . . for some administrative functions." If what Preston avers is true, however, Defendants have failed to disclose the rather significant facts that the two entities share a common CEO (or top manager), hold joint events and meetings, issue joint memoranda (without distinction between the entities), and rank their respective restaurants against each other as if a common entity.

Restaurant-Level Managers during the relevant period, Sylvan asks the court to rely on affidavits from four Restaurant-Level Managers who aver that they never incurred a deduction of the type challenged.  It is not clear whether the purpose of this offering is to show that deductions were so rare as to make them irrelevant to a determination of exempt status or to persuade the court that it would need to make an individualized inquiry as to the exempt status of each Restaurant-Level Manager. If Simons' legal argument on Reply is correct, as it appears to be, the latter argument fails. *See* Dkt. No. 34 at 4 (quoting 29 C.F.R. § 541.603(b) which appears to make a determination of a lost exemption applicable to all employees "in the same classification working for the same managers responsible for the actual improper deductions").  In any event, the evidence of two managers on one side and four on the other leaves open the experience of ninety-six managers as to whom no information is given.

Thus, the affidavits offered by Defendants show only that there are four managers who never incurred the challenged deductions.  It does not support an inference that Defendants did not follow a practice of imposing such deductions when the relevant circumstances arose (*e.g.,* cash shortages, lost inventory, days lost to illness).  It is notable here that, despite having access to the relevant information, Defendants fail to offer any evidence as to their actual practices with respect to deductions.[14]

---

[14]  Barbara Baker, Sylvan's office manager since 1993, provided affidavits as to deductions from both Simons' and Preston's salaries. Dkt. No. 32-3, 32-4.  In her affidavit regarding Simons, Baker notes that Sylvan employed approximately 102 restaurant-level managers during the relevant three-year period.  Dkt. No. 32-3 ¶ 12.  She does not offer any information as to the existence or frequency of deductions from the salaries of these managers.  Most critically, despite access to personnel files and her many years of experience, she does not state that the categories of deduction referenced in the Complaint (and authorized by the Manuals) were not made from salaries of Restaurant-Level Managers.

As to Simons, Baker discloses deductions for tax garnishments and failed inspections .  She does not disclose any deduction for cash shortages (although Simons avers she incurred such a

This is not to say that Simons has presented all of the evidence likely to be in her control which might support certification. For example, there are gaps in Simons' and Preston's affidavits with regard to when deductions were made and the restaurant locations involved. There are also ambiguities as to whether deductions were merely threatened (and for what purposes) or actually made. There also appear to be some inconsistencies between Simons' complaint, memoranda, and affidavit with respect to what deductions were made, when and where.[15] While the standard for conditional certification may be lenient, the court is not inclined to certify a collective action in the face of such factual deficiencies where a cure is within the moving party's control.

The court is also concerned with Simons' failure to provide authority in support of the premise that the challenged deductions were "improper" under the relevant regulation(s). Instead of providing such authority (on a deduction-specific basis), Simons appears to presume that all of the deductions referenced in the Complaint, Manuals, and affidavits would be improper, at least if taken from a salaried employee.[16] While Simons need not prove her case prior to certification of a

deduction and refers to "threats" of other deductions). Neither does Baker expressly deny that such a deduction was made.

As to Preston, Baker discloses only deductions for tax garnishments. She does not disclose the categories of deduction referenced in Preston's affidavits (for cash shortages, as well as at least one of the following: failed inspections, lost inventory, or other lost or damaged property). As in the case of Simons, Baker does not expressly deny that such deductions were made.

[15] For example, the unverified complaint suggests Simons suffered "improper" deductions for cash register shortages, health related violations (letting chicken stay in the warmer too long), letting product run out, sick leave, and other unspecified deductions for quality and quantity of work. Complaint ¶¶ 18, 22, 23, 26-31. Her affidavit only supports personal deductions for cash shortages, though she refers to "threats" of other deductions. No dates, locations, or amounts are provided in either the affidavit or the Complaint.

[16] The Manuals refer to deductions from "wages" and are limited by a statement that any deductions will be in accordance with "Department of Labor Laws." Thus, it is neither clear whether the Manuals are intended to cover deductions from the paychecks of salaried managers, as opposed to wage workers, nor whether actual practices kept deductions from salaries (if any) from being "improper" under the relevant regulations. These are topics which neither side has addressed.

19

collective action, this court is unwilling to certify a collective action where Simons relies on a broad category of sometimes vaguely- defined deductions as to which she has not made a threshold showing of impropriety.

**Denial without prejudice.** In sum, even under the limited proof required for conditional certification, the court finds the record too unclear at this stage to determine (1) whether to grant conditional certification, and (2) if granted, what limitations to impose on the scope of the action. While Simons has failed to provide sufficient evidence and authority to support certification or to define the scope of the action (either in size or challenged practices), she has made a sufficient showing to persuade the court to leave open the possibility of later certification. The court will, therefore, allow a limited period of discovery on specific subjects to be followed, if appropriate, by a second motion for conditional certification.

## DISCOVERY

**A.**    **Within twenty-one days of entry of this order,**

1.    Defendants will produce the personnel files and payroll records for Simons and, if she consents, Preston;

2.    Plaintiff will produce any documents or other evidence in her possession or control which relate to deductions Simons and Preston claim they have incurred in the three-years predating this action;

3.    Defendants may serve interrogatories on Plaintiff requiring her to specify and provide information regarding the deductions she claims personally to have incurred or understands Preston incurred, and to identify any other deductions she believes were imposed on other Restaurant-Level Managers if she will rely on those categories of deduction in support of a claim that Restaurant-Level Managers should

20

be treated as non-exempt; and

4.    Plaintiff may serve interrogatories on Defendants relating to the ownership and management of Sylvan and Pryor's, preparation and scope of the Manuals (*e.g.*, how prepared, when in effect, entities and employees covered), actual practices (based on the Manuals or otherwise) relating to any deductions from *salaries* which are specifically challenged in this action, any basis on which Defendants rely in asserting that the deduction rules as stated in the Manuals were not applied to salaried workers or were applied differently at different restaurant locations.

**B.    Responses to the interrogatories allowed above will be made within twenty-eight days after service of the interrogatories.**

**C.    Within seventy days after entry of this order, the parties may conduct,**

1.    Depositions of Tim Wilson and any individuals who provided affidavits in favor of or opposition to certification;[17]

2.    Any other discovery the parties agree is necessary to decide whether to conditionally certify a collective class.

**D.    Either party may move for certification of a collective action after the completion of the discovery period allowed above.**

---

[17] Absent agreement to the contrary, these depositions shall be limited to subjects relevant to certification of a collective action.

21

**E.** No later than August 12, 2011, the parties should confer to determine what, if any, modifications should be made to the current scheduling order (Dkt. No. 14) and, as appropriate, should move to amend that order.

**CONCLUSION**

For the reasons set forth above, the court denies Plaintiff's motion for conditional certification of a collective action without prejudice and directs that discovery be conducted as outlined above. Upon completion of discovery, Plaintiff may again move for conditional certification of a collective action.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
July 26, 2011