IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Dianna Simons individually and on behalf of other similarly situated Consenters,<br><br>Plaintiff,<br><br>v.<br><br>Pryor's, Inc., KFC Group of Columbia, Inc., Sylvan Food Systems, Inc., XXX, Inc., YYY, Inc., and XXX, Inc.,<br><br>Defendants.<br>_____ | C/A No.  3:11-cv-0792-CMC<br><br>**OPINION AND ORDER GRANTING, IN PART, RENEWED MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION AND MOTION TO STAY** |

Through this action, Plaintiff Dianna Simons ("Simons") seeks recovery of unpaid overtime on behalf of herself and similarly-situated managerial employees of Defendants Pryor's Inc. ("Pryor's") and Sylvan Food Systems, Inc. ("Sylvan"). For purposes of this action, Simons alleges that the similarly-situated managerial employees include all General Restaurant Managers and Assistant Unit Managers (collectively "Restaurant-Level Managers") of both Pryor's and Sylvan. Simons' claim for unpaid overtime rests on allegations that these managerial positions lost their exempt classification under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), because Defendants made improper deductions from the Restaurant-Level Managers' salaries or required these managers to make cash payments to the employer in lieu of deductions.

The matter is now before the court on two related motions: (1) Simons' renewed motion for conditional certification of a collective action under 29 U.S.C.§ 216(b) (Dkt. No. 60); and (2) Simons' motion to stay the scheduling order deadline for amending pleadings (Dkt. No. 66). For the reasons set forth below, the court grants both motions in part, and conditionally certifies a

1

collective action consisting of all Restaurant-Level Managers employed by Defendant Sylvan during the three-year period predating entry of this order.

**I.     RENEWED MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION.**

**STANDARD**

Simons' motion for conditional certification of a collective action is founded on the Fair Labor Standards Act, 29 U.S.C. § 216(b), which provides as follows:

> An action to recover [unpaid overtime compensation] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Certification of a collective action under Section 216(b) is generally approached as a two-step process. *See generally Purdham v. Fairfax County Pub. Schs*, 629 F. Supp. 2d 544, 547-48 (E.D. Va. 2009) (noting that "the Fourth Circuit has not settled on a test for conditional certification in an FLSA action"). First, the court examines the pleadings and any supporting affidavits offered to determine whether members of the proposed class are "similarly situated."[1] *Id.* at 548; *see also Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213–14 (5th Cir.1995) (addressing disparate approaches followed by different courts but declining to decide which approach should apply) *overruled on other grounds by Desert Place, Inc. v. Costa*, 539 U.S. 90 (2003).[2] At the notice

---

[1] The court uses the term "class" somewhat loosely in this order. The certification here is not of a "class" as that term is used under Fed. R. Civ. P. 23. Instead, the certification sought is of a "collective action" as allowed under the FLSA.

[2] In *Mooney*, the court affirmed decertification of a class conditionally certified under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). Although a different statute was involved, the court considered the standards applied under the FLSA because

(conditional certification) stage, courts generally have minimal evidence. Consequently, they "appear to require nothing more than substantial allegations that the putative class members were together the victims of a single [challenged] decision, policy, or plan[.]" *Mooney* at n. 8 (quoting *Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D. 392 , 407 (D.N.J. 1988)). Plaintiff's burden is neither "onerous" nor "invisible." *Purdham* at 548 ("At the 'notice' stage, the burden on the plaintiff to show the existence of a putative class of 'similarly situated' persons is relatively light.").

If the court finds that the proposed class members are similarly situated, the court conditionally certifies the class, giving putative class members notice and the opportunity to opt in. *Mooney* at 1214; *Purdham* at 547. Thereafter, after discovery is largely complete, the court may reconsider whether the matter should proceed to trial as a collective action if a motion for decertification is filed. *Id.*

## BACKGROUND

Plaintiff's original motion for certification was denied without prejudice to renewal following a period of discovery. Dkt. No. 35 (order entered July 26, 2011). Her motion to reconsider the denial was granted in part and denied in part, resulting in some modifications of the earlier order but not modifying the result. Dkt. No. 51 (entered Sept. 15, 2011).

Plaintiff's renewed motion for conditional certification is supported by the results of that discovery. Defendants, in turn, rely on information obtained through the same process to oppose the motion. To the extent necessary to this order, the additional evidence not available at the time

---

Section 216 of the FLSA is incorporated into the ADEA. *Id.* at 1211. Ultimately, the court found it unnecessary to decide which methodology was correct because the decertification decision was proper under either approach.

of the original order is discussed below.

## DISCUSSION

**A.     Additional Evidence Regarding Scope of Pay Practices**

In denying Plaintiff's original motion for conditional certification, the court noted a number of specific concerns regarding the factual allegations (and supporting record) as well as an absence of legal argument as to certain points. The record now before the court is substantially more developed both from a factual and legal standpoint. For example, the deposition of a corporate representative for both Defendants reveals that the "wage deduction" provisions found in the Employee Handbooks/Policy Manuals used by both Defendants were equally applicable to wage and salaried workers.[3] *See, e.g.,* Sylvan Rule 30(b)(6) Deposition ("Sylvan depos.") at 42-43.[4] This deposition confirmed that the deductions listed were not just the written policy of Sylvan and Pryor's but were "actually enforced as to salaried employees." *Id.* at 53-54 (responding affirmatively to question); *id.* at 74 (confirming that policy requiring reimbursement of cash register shortages was applied to all salaried employees).[5] The corporate representative, whose answers are binding on both corporations (*supra* n.4), also testified that Tim Wilson ("Wilson") served as "vice president of operations" and was responsible for "operations at the store level." *Id.* at 15. She confirmed that memoranda Wilson issued regarding procedures would be considered "written

---

[3] A number of Plaintiff's challenges to Defendants' pay practices are evidenced by two documents, each of which is entitled "Employee Handbook/Policy Manual" and includes the names of both Defendants on the cover page.

[4] The corporate representative, Barbara Baker ("Baker"), gave the cited testimony on behalf of Sylvan. Dkt. No. 71-3 at 1. The parties have, however, stipulated that the responses would be the same for Pryor's. Sylvan depos. at 20 (Dkt. No. 60-6 at 10).

[5] The corporate representative also conceded that company policy did not require a written record of cash repayments made in lieu of salary deductions. *Id.*

policies" of the companies. *Id.* at 49. Those memoranda covered matters such as fining managers for certain failed inspections and docking their salaries for missed time due to illness or for the cost of parts (*e.g.*, screens) improperly thrown away. *Id.* at 56-60. The corporate representative also confirmed that these fines, and other policies found in Wilson's memoranda, were applied to salaried employees. *Id.*, *see also id.* at 76 (conceding it was company policy to reduce managers' salaries for certain reinspection fees, missed time due to illness, and disciplinary suspensions).

This testimony, together with Wilson's deposition testimony and related documentary evidence (*e.g.*, Wilson memoranda and a sampling of payroll records), provides threshold support for the proposition that Defendants had a common policy and engaged in a common practice of taking arguably improper deductions from the salaries of Restaurant-Level Managers.[6] *See generally Auer v. Robbins*, 519 U.S. 452, 460 (1997) (adopting Secretary of Labor's interpretation of "the salary-basis test to deny exempt status when employees are covered by a policy that permits disciplinary or other deductions in pay 'as a practical matter[,]'" which "standard is met . . . if there is either an actual practice of making such deductions or an employment policy that created 'significant likelihood' of such deductions.").

---

[6] In her opening memorandum, Plaintiff notes that, despite claiming it would impose an undue burden to require Defendants to search all employee files for allegedly improper deductions, deposition testimony revealed that Defendants have been making refunds of a number of the challenged deductions since this action was filed. *See* Dkt. No. 60-1 at 2 (indicating one Defendant had refunded $23,000 to 75 employees, while the other had refunded $7,000 to 25 employees); *id.* at 22 (addressing Defendants' position as to burdensomeness). The refunds apparently relate to deductions made for cash register shortages, disciplinary deductions, failed safety inspections, sick leave deductions, and inventory issues. *Id.* at 2. While not an admission of impropriety, the refunds do support the conclusion that both Defendants have made the challenged deductions with some degree of regularity.

While not all of the challenged deductions may prove improper under the FLSA, Plaintiff has made a threshold showing that at least some of them may have been and that the challenged deductions were applied in a similar manner to persons similarly situated to Plaintiff. This, combined with the similarity of job requirements and pay provisions, is enough to satisfy the minimal requirements for conditional certification of a collective action made up of all Restaurant-Level Managers absent some countervailing reason not to do so. *See Tucker v. Labor Leasing, Inc.,* 872 F. Supp. 941, 947 (M.D. Fla. 1994) (for overtime cases, the similarly-situated standard is satisfied if the members of the class have similar job requirements and pay provisions).

**B.     CHALLENGES TO CERTIFICATION OF ANY COLLECTIVE ACTION**

Defendants present several arguments against certification of *any* collective action.[7] The court does not find those arguments sufficient to support denial of conditional certification for the reasons addressed below.

**Alleged Perjury and Misstatements by Plaintiff.** Defendants first argue that the collective action should not be certified because of alleged perjury and misstatements by Plaintiff. *See* Dkt. No. 62 at 6-13. The court is not persuaded that Plaintiff's verification of the complaint constitutes either perjury or a misstatement to the court. Read in context, the allegations on which Defendants focus refer to specified provisions in the Employee Handbooks/Policy Manuals as evidence that Defendants had a policy and practice of making allegedly improper deductions. *See* Complaint ¶¶ 16-17. Plaintiff's deposition testimony, that she did not have personal knowledge of some of these practices, is not necessarily inconsistent with this allegation given its stated basis. *See* Complaint

---

[7] Alternative arguments for certification of a narrower class are addressed in Section III below.

¶ 17.[8]

Defendants also argue that Plaintiff (or her counsel) made a misrepresentation in a filed memorandum to the effect that *Plaintiff* had been "approached" by other employees or former employees who desired to join the collective action. Dkt. No. 62 at 8-9. In her deposition, Plaintiff denied that she had been approached by some or all of these individuals. *Id.* (discussing Plaintiff's testimony). In her reply, Plaintiff (through counsel) concedes that most of the contacts were directed to her attorneys. While the statement in the earlier memorandum may have been inartfully worded, the court does not find it to be an intentional misrepresentation, and certainly not a misrepresentation by Plaintiff personally.

For these reasons, and in light of the applicable standard, the court does not find either the allegation of perjury or the allegation of a misrepresentation sufficient to preclude conditional certification.

**Conflicts of Interest.** Defendants also argue that conditional certification should be denied because some members of the class proposed by Plaintiff might be able to assert claims for some of the allegedly improper deductions against other members of the class. Dkt. No. 62 at 13-18. Defendants argue that this not only presents an intra-class conflict for the class members, but also an ethical conflict for Plaintiff's counsel. *Id.* at 19-21.

The potential conflict flows from the FLSA's broad definition of "employer" and the fact that some members of the proposed class (particularly Restaurant General Managers) likely enforced at least some of the deduction policies against other class members (their subordinate assistant

---

[8] In contrast to the handbook-based allegations in paragraphs 16 and 17, Plaintiff included several allegations relating to deductions made from her salary. *See* Complaint ¶¶ 18, 22-24, 26-30, 32. The perjury allegations do not challenge the veracity of these verified allegations.

managers and lower-level employees). These higher-level enforcers presumably had a dual financial motivation for enforcing the policy: the risk that the deduction would be taken from the enforcer's salary if not taken from the subordinate's salary; and the risk that failing to make the deduction would reduce the enforcer's potential bonus.[9]

The court is not persuaded that these potential conflicts are sufficient to preclude conditional certification of a class including both Restaurant General Managers and Assistant Unit Managers. First, Defendants cite only one arguably comparable FLSA decision in which the court found a conflict between putative class members. *White v. Osmose, Inc.,* 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002).[10] In *White*, the court declined to certify a broad class including both crew foremen and crew members for two reasons. First, the court noted the substantial differences in job duties. Second, and more relevant here, the court found a conflict between the representative plaintiff, a crew foreman, and crew members because crew foremen were directly responsible for the challenged under reporting of hours worked. While company policies (including formal policies relating to bonuses and at least one oral instruction from a higher-level supervisor in the case of the

---

[9] The memoranda and supporting documents reveal that Restaurant-Level Managers were not only paid a salary but were also eligible for bonuses. These bonuses were based on profitability of the restaurants for which the managers were responsible.

[10] The remaining cases cited by Defendants stand only for general propositions such as that the FLSA defines "employer" broadly. *See, e.g., Luder v. Endicott,* 235 F.3d 1020 (7th Cir. 2001) (distinguishing state correctional department's warden, deputy warden and personnel officers, who were sued in their individual capacity, from the state itself, in suit seeking compensation for unpaid work before and after regular shifts, but holding that suit was, nonetheless, barred by the Eleventh Amendment); *Reich v. Circle C. Invest. Inc.*, 998 F.2d 324 (5th Cir. 1993) (holding "consultant" to nightclub who exercised control over the business was employer in suit seeking to enjoin violations of minimum wage, overtime, and record-keeping provisions of the FLSA); *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987) (noting, in addressing claim under the Equal Pay Act, that FLSA defines employer broadly).

named plaintiff, a first-level crew foreman) may have encouraged the under reporting, there is no suggestion that the under reporting was *required* by an official company policy. Thus, the decision to make false reports would have been within the control of the individual foreman who should have known that such false reporting was a violation of the FLSA.

In contrast, the deduction (and repayment) policies at issue here were written policies of the company. There is little if any evidence that Restaurant-Level Managers had discretion whether to enforce these policies except at risk of paying the penalty themselves. Finally, unlike the under reporting of hours, the deduction policies which might have been enforced by the Restaurant-Level Managers are not so clearly "illegal" that a Restaurant-Level Manager would be on notice of their impropriety.[11]

Under these circumstances, and for additional reasons argued by Simons, the court finds insufficient evidence of a conflict between Restaurant General Managers and Assistant Unit Managers to preclude collective treatment of their claims. It follows that Plaintiff's counsel is not prohibited from representing both categories of employee in a single action.

**Necessity for Individualized Analysis of Deductions.** Defendants next argue that conditional certification is inappropriate because the court "will be required to individually analyze the alleged deductions . . . for legality." Dkt. No. 62 at 22. Defendants identify deductions for failed food safety inspections and disciplinary suspensions as among the deductions requiring individual analysis. *Id.* at 22-26. They also suggest that the fact class members were eligible for bonuses might require individualized analysis of at least some of the deductions. *Id.* at 26-27.

---

[11] As the court understands Simons' position, it is not so much that the deductions were *per se* "illegal," as it is that they had a *legal effect* on the exempt status of any managerial positions to which they were applied. Even this potential legal effect would likely be unknown to Restaurant-Level Managers, who reasonably relied on formal policies published in Employee Handbooks/Policy Manuals and memoranda issued by the top-level operational manager, Wilson.

9

The court assumes without deciding that some of the alleged deductions might require individualized analysis. This is not, however, certain at this stage. At the least, certain overriding issues might be subject to resolution without individualized analysis. It is, moreover, possible that resolution of the non-individualized issues will moot the need to consider the individualized issues.

The court reaches the same conclusion as to the bonus-based argument. At present, there is little if any evidence that the deductions would only have been made from or had an impact on bonuses. Even if there is some evidence in support of these factual premises, the legal effect would not be definitive at this point. Under these circumstances, the court finds this argument insufficient to justify denial of conditional certification.

## C.     ARGUMENTS FOR LIMITING THE SCOPE OF THE CLASS

Finally, Defendants argue that if any class is certified, it should be limited to (1) Assistant Unit Managers (2) employed by Sylvan. Dkt. No. 27-30. The court will impose only the second limitation. Defendants have presented substantial, unchallenged evidence that they are distinct corporations which have followed all the proper formalities to avoid being considered a single entity or held liable for each other's debts or other obligations. This is true despite their joint operational management by Tim Wilson under common Employee Handbooks/Policy Manuals and memoranda issued by Wilson jointly to employees of both entities.

Despite these unique circumstances suggesting common operational management, the court finds no authority supporting certification of a collective action covering two distinct legal entities. This is particularly true where the only named Plaintiff was employed by only one of the two companies.

There is no such legal impediment to including both Restaurant General Managers and Assistant Unit Managers of a single employer in the same class as their duties are similar and the

challenged practices identical with respect to both groups. Moreover, for reasons explained above, the court finds no conflict between these two job classifications.

**D.    NOTICE**

For the reasons set forth above, the court finds that Plaintiff has satisfied the requirements for conditional certification, supporting issuance of notices to Restaurant-Level Managers (General Restaurant Managers and Assistant Unit Managers at individual restaurant locations) who have been employed by Defendant Sylvan Food Services, Inc. at any point during the three-year period predating entry of this order. Defendant Sylvan shall prepare a list with last known addresses of all such persons within two weeks of entry of this order. **In the interim, counsel shall contact chambers regarding finalization of the notice, preparation of a time-line for sending notices, and related administrative matters** with a goal of mailing the notices in early January 2012.

**II.    MOTION TO STAY**

As argued in Defendants' opposition memorandum, the parties entered a consent amended scheduling order which placed the deadline for amending pleadings prior to the date when briefing on the conditional certification motion would be complete. In addition, Plaintiff had the benefit of substantial discovery prior to the expiration of the amendment deadline set by the consent order. These factors militate against any general extension of the deadline for amending pleadings.

As Defendants also note, a party may seek leave to amend pleadings beyond the amendment deadline when the party makes a showing of good cause for the delay in addition to satisfying the requirements for amendment of pleadings. Good cause might, for instance, be shown if amendment was necessary to comply with a court order or to address unexpected circumstances such as the discovery of unanticipated facts. Thus, the possibility that amendment to conform to this order might be necessary or discovery might reveal an unanticipated factual basis for the claims does not

justify a general extension of the deadline for amending pleadings.

Under these circumstances, the court denies Plaintiff's motion except to the following limited extent. Plaintiff may move to amend her complaint within fourteen calendar days of entry of this order. Any such proposed amendment shall be provided to Defendants within seven calendar days of entry of this order. Defendants shall advise Plaintiffs within three business days whether they will consent to the amendment.

No additional justification shall be required to the extent the amendments are by consent or are intended to *clarify* the deductions (or cash payments) challenged as improper or to *remove* any allegations or parties. This clarification may include additional allegations of improper deductions, but only to the extent the deductions are referenced as challenged deductions in Plaintiff's memoranda in support of her renewed motion for conditional certification. *E.g.*, Dkt. No. 60-1 at 10 (listing five categories of challenged deductions). Plaintiff may, likewise, make other modifications in her factual and legal allegations to the extent necessary to conform the complaint to the evidence, but without substantial expansion of the scope of the claims.

To the extent proposed amendments fall within these categories, Plaintiff need only identify the changes and affirm that they are authorized by this order or by consent. If Plaintiff desires any broader amendment, including the addition of any parties, she shall provide an appropriate justification for the amendment and for the delay in seeking the amendment.

## CONCLUSION

For the reasons set forth above, the court conditionally certifies a collective action consisting of all Restaurant-Level Managers (Restaurant General Managers and Assistant Unit Managers) of Defendant Sylvan Food Systems, Inc., and directs counsel to contact chambers upon receipt of this order to arrange for finalization of the notices and other related matters. Plaintiff's motion to stay

the deadline for amending pleadings is granted in part as set forth above.

    IT IS SO ORDERED.

                                        s/ Cameron McGowan Currie  
                                        CAMERON MCGOWAN CURRIE  
                                        UNITED STATES DISTRICT JUDGE

Columbia, South Carolina  
November 30, 2011